J-S07022-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
TONY THOMAS RODRIGUEZ :
:
Appellant : No. 916 MDA 2025

Appeal from the Judgment of Sentence Entered June 30, 2025
In the Court of Common Pleas of Adams County Criminal Division at
No(s): CP-01-CR-0001183-2024

BEFORE: BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.: **FILED: APRIL 15, 2026**

Appellant, Tony Thomas Rodriquez, appeals from the judgment of

sentence entered on June 30, 2025. We affirm.

The trial court summarized the relevant facts of this case as follows.

> On the evening of September 13, 2024, Appellant, [Appellant's then-girlfriend, S.C., (hereinafter, the "Victim")], and Appellant's adult daughter, J.R., were out for approximately four hours, visited several bars in Gettysburg[, Pennsylvania] and were drinking. Shortly after midnight on September 14, 2024, Appellant, the Victim and J.R. were walking down Racehorse Alley in Gettysburg. The Victim testified that Appellant assaulted her, but she does not have an independent recollection of the assault. The Commonwealth presented three separate videos of the assault[.] … The videos clearly illustrate an unprovoked assault where Appellant runs toward the Victim, takes at least two steps, winds up his right arm and hand and strikes the Victim in the face with a closed fist. The Victim immediately fell backward, and her head and back struck the roadway. Appellant initially stood over the Victim in a taunting manner after the assault while the Victim lay unconscious on the roadway. Appellant stomped away from the Victim and did not provide any assistance.

\*\*\*

The Victim went to work the morning of September 14, 2025, but could not perform her duties as manager at Wendy's restaurant because of pain from the assault. The Victim continued to have medical issues resulting from the concussion for one to two weeks. The Victim also suffered severe back pain from the incident and continued to suffer back pain through the date of the trial, April 7, 2025.

On September 15, 2024, the Victim received medical treatment at Wellspan Gettysburg Hospital and was examined by emergency room doctor Catherine Fraley (hereinafter "Dr. Fraley"). Dr. Fraley is board certified in emergency medicine and was qualified as an expert in emergency medicine. Dr. Fraley testified that she observed a large hematoma, diffuse tenderness, abrasions and other bruising on the back of the Victim's head, face and chin. Dr. Fraley reviewed a CT exam of the Victim's brain and CT images of the Victim's lumbar spine. Dr. Fraley opined that the Victim suffered from a concussion and mild traumatic brain injury, which impairs the function of the brain. The hematoma on the back of the Victim's head measured 3.1 centimeters wide and 1.1 centimeters in depth.

Dr. Fraley also opined that the Victim suffered a non-displaced fracture extending through the third and fourth sacral segments and into the posterior elements of the third sacral segment, as well as a partial sacralization of the L5 vertebral body. Dr. Fraley also observed disc bulges noted at L1 - L2 and L4 - L5. Dr. Fraley identified the sacrum location, right above [] the tailbone, as part of the spine. Dr. Fraley testified that the non-displaced fractures of the sacrum are considered spinal fractures, and the fracture would take six to [12] weeks to heal.

The Commonwealth also presented testimony from Physician Assistant Andrea Velasquez (hereinafter "P.A. Velasquez"), who is employed as a Physician Assistant at Family First Health in Gettysburg. P.A. Velasquez provided follow-up medical care following the Victim's diagnosis and treatment by Dr. Fraley on September 15, 2024. … P.A. Velasquez treated the Victim for her back pain and had appointments with the Victim on September 24, 2024, October 14, 2024, October 29, 2024 and March 4, 2025. P.A. Velasquez testified that the Victim continued to suffer back pain up to and including her last examination on March 4, 2025. As a result of the back pain,

the Victim was not able to continue employment as manager of Wendy's.

Trial Court Opinion, 8/20/25, at 1-3.

The matter proceeded to a jury trial on April 7, 2025. That day, the jury convicted Appellant of aggravated assault – intent to cause serious bodily injury, simple assault and criminal mischief.[1] On June 23, 2025, the trial court sentenced Appellant to 66 months to 12 years' incarceration. The trial court also ordered Appellant to pay $1,155.00 in restitution to the Victim. On June 30, 2025, the trial court amended Appellant's judgment of sentence, directing all of Appellant's restitution payments to "initially go towards restitution until restitution [was] paid in full." Trial Court Order, 6/30/25, at 1. Otherwise, Appellant's sentence remained unchanged. This timely appeal followed.

Appellant raises the following issue for our consideration:

Was there sufficient evidence presented at trial to support [Appellant's] conviction for aggravated assault?

Appellant's Brief at 10.

Herein, Appellant challenges the sufficiency of the evidence supporting his conviction for aggravated assault. In reviewing a challenge to the sufficiency of the evidence, we "determine whether the evidence admitted at trial and all reasonable inferences therefrom, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to prove every element of the offense beyond a reasonable doubt." **Commonwealth**

_____

[1] 18 Pa.C.S.A. §§ 2702(a)(1), 2701(a)(1), and 3304(a)(5), respectively.

*v. Palmer*, 192 A.3d 85, 89 (Pa. Super. 2018). The Commonwealth "need not establish guilt to a mathematical certainty," meaning any doubt about a defendant's guilt "is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Commonwealth v. Sebolka*, 205 A.3d 329, 336-337 (Pa. Super. 2019). This standard is equally applicable to cases where the evidence is circumstantial rather than direct "so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Swerdlow*, 636 A.2d 1173, 1176 (Pa. Super. 1994). The Commonwealth may sustain its burden by means of wholly circumstantial evidence. *Commonwealth v. Montalvo*, 956 A.2d 926, 932 (Pa. 2008), *citing* *Commonwealth v. Diggs*, 949 A.2d 873, 977 (Pa. 2008). It is "within the province of the fact-finder to determine the weight to be accorded to each witness's testimony and to believe all, part, or none of the evidence." *Palmer*, 192 A.3d at 89.

On appeal, Appellant claims that the Commonwealth failed to prove that he caused or attempted to cause serious bodily injury to the Victim. In Appellant's view, the Commonwealth did not demonstrate that, by striking the Victim once in the face, he caused the victim to suffer serious bodily injury or that he attempted to cause the Victim to suffer serious bodily injury. We disagree.

Section 2702(a)(1) of the Crimes Code provides that an individual is guilty of aggravated assault if he:

attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1). The term "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss of impairment of the function of any bodily member or organ." 18 Pa.C.S.A. § 2301. This Court has held that a bodily injury that impairs the function of the brain, such as a concussion, "is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S.A. § 2301." **Commonwealth v. Santiago**, 294 A.3d 482, 486 (Pa. Super. 2023) (holding: "concussing someone during an assault is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S.A. § 2301, as a matter of law").

Herein, the Commonwealth presented video evidence of the incident. In the video, Appellant runs toward the Victim, "winds up his right arm and hand" and strikes the Victim "in the face with a closed fist." Trial Court Opinion, 8/20/25, at 2; **see also** N.T. Trial, 4/7/25, at 41. The video also depicts the Victim subsequently falling backward and then striking her lower back and head on the pavement. Trial Court Opinion, 8/20/25, at 2. Finally, the Commonwealth presented evidence explaining that, as a result of the attack, the Victim "suffered a large hematoma on the back of the head with abrasions and open an open wound, suffered a concussion which resulted in headaches for several weeks, and suffered several fractures to her spine." Trial Court Opinion, 8/20/25, at 8; **see also** N.T. Trial, 4/7/25, at 57-58, 104-108, and

132. These injuries caused the Victim to "continue to suffer severe back pain" and be unable to work for approximately six months. Trial Court Opinion, 8/20/25, at 8; *see also* N.T. Trial, 4/7/25, at 58-61. Undoubtedly, such evidence is sufficient to prove that Appellant intended and, in fact, caused the Victim serious bodily injury. *See Santiago*, 294 A.3d at 486 (concluding that there was sufficient evidence of serious bodily injury because the victim suffered from a concussion and missed two weeks of work due to the appellant's conduct).

Judgment of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 04/15/2026